(No. 10804.)

THE ROYAL COLLIERY COMPANY, Defendant in Error, *vs.*
THE ALWART BROS. COAL COMPANY, Plaintiff in Error.

*Opinion filed December 21, 1916.*

1. DEBTOR AND CREDITOR—*debtor may direct application of voluntary payments.* A debtor making a voluntary payment to a creditor may direct its application to such part of his indebtedness as he sees fit, and the creditor must comply with the direction if he accepts the money.

2. SAME—*creditor may presume payment was intended to be applied on account due.* Where a debtor makes a voluntary payment on account, the creditor has a right, in the absence of any direction on the part of the debtor, to presume that the payment was intended to be applied on indebtedness which is due.

3. SAME—*a payment made on account may afterwards be applied to particular items by agreement.* A payment made on account, without direction as to its application, may afterwards be applied to particular items of indebtedness by mutual agreement of the debtor and creditor where the interests of third parties are not involved.

4. SAME—*when receipt of voucher check constitutes agreement as to application of a previous payment.* A voucher check which states an account between the parties for particular items and is in full for the balance due therefor, including as a credit a previous payment made without direction as to its application, constitutes a proposition to the creditor to apply such previous payment to the particular items, and an acceptance of the check by the creditor constitutes an agreement to such application, particularly where the check contains on its face the words, "If not correct return without alteration and state difference," and a statement that the creditor has received the amount specified therein in full payment of the "within account."

5. PRACTICE—*when Supreme Court may look into evidence of adjudicated case in United States court.* Where the evidence in an adjudicated case in the United States district court is introduced on the trial of an action between the same parties in a State court to determine how a certain payment by the debtor had been applied, the Supreme Court may look into such evidence to determine whether there was any evidence to justify the jury in the State court in finding that the payment was applied on the general account between the parties and not upon the account involved in the State court.

276 — 13

WRIT OF ERROR to the Second Branch Appellate Court for the First District;—heard in that court on appeal from the Municipal Court of Chicago; the Hon. JAMES C. MARTIN, Judge, presiding.

JOHN A. McKEOWN, for plaintiff in error.

FRANK CROZIER, for defendant in error.

Mr. JUSTICE DUNN delivered the opinion of the court:

The Royal Colliery Company recovered a judgment in the municipal court of Chicago against the Alwart Bros. Coal Company, which the Appellate Court affirmed, and the defendant has brought the record here by a writ of *certiorari* for review.

The claim of the plaintiff was for coal sold and delivered and the defense was payment and a former adjudication. At the close of the evidence the defendant asked a peremptory instruction in its favor, which the court refused.

The facts shown were, that on July 25, 1911, the defendant, the Alwart Bros. Coal Company, entered into a contract with plaintiff, the Royal Colliery Company, for the purchase of 20,000 tons of a certain kind of coal at the price of $1.07½ a ton at the mines, to be shipped in about equal quantities, monthly, until March 31, 1912, as ordered, payments to be made on the 20th of each month for one-half of all coal shipped during the preceding month, the other half to be paid for on the 10th of the second month after shipment. During the period covered by this contract the defendant also purchased of the plaintiff certain other coal known as washed coal, for which payment was to be made on the 10th of the month following shipment. The price of the kind of coal covered by the contract for 20,000 tons during the period from the date of the contract to the first of January was considerably below the contract price, and the defendant did not order about 2500 tons

a month, as contemplated by the contract. The deliveries each month were very much short of that quantity, amounting during that time to only 4686 tons instead of 7500 tons, the proportionate amount which should have been called for. From January 1 to February 20, 3262 tons were delivered. On the latter date a disagreement arose between the parties, and the defendant demanded the delivery of the remaining amount under the contract between that day and March 31, but the plaintiff refused, and no coal was delivered after February 20 under the contract. In the meantime the plaintiff had sold and delivered to the defendant in each of the months subsequent to the date of the contract, coal which was not included in the contract, and continued to make deliveries of such coal during the month of March, and about these sales there has never been any disagreement. On February 20, 1912, all the coal which had been delivered under the contract before the first of January had been paid for. The coal delivered during the month of January amounted to $1817.08, one-half of which was due on February 20. There was also due on that day $268.11 for other coal delivered during the month of January, and the defendant was also indebted to the plaintiff for the remaining half of the coal delivered in January and for coal delivered in February under the contract and for other coal delivered in February, all this other indebtedness maturing during the next month. On February 20 the defendant paid to the plaintiff $1100 on account, saying nothing as to its application except that it was paid on account, and that sum was credited by the plaintiff on the general account of the defendant without designating any particular application. On June 15, 1912, the defendant sent to the plaintiff a check for $376.40, called a voucher check, showing on its back a statement of account between the plaintiff and the defendant, charging the defendant in three items with the bills rendered for the washed coal, constituting the plaintiff's claim in this suit, amounting to $1485.37,

and two other small items, amounting to $18.41, making a total of $1503.78, and taking credit for the check of February 20 for $1100 and another item of $27.38, amounting to $1127.38, leaving a balance of $376.40. The following words appeared on the face of the check: "If not correct return without alteration and state difference. Received the amount stated in this voucher check in full payment of the within account." The check was received by the plaintiff, was indorsed and collected by it and returned canceled through the bank on which it was drawn, to the defendant, with the receipt on its face signed by the plaintiff. On September 10, 1912, this suit was begun in the municipal court for the items stated on the back of the check of June 15. On October 15, 1912, the plaintiff sued the defendant in the district court of the United States for the sum of $5000. The declaration consisted of the common counts. Afterwards the defendant sued the plaintiff in the municipal court of Chicago for damages for failing to deliver the full amount of the coal required by the contract. This case was removed to the United States district court, the two cases were tried together, and a judgment was rendered against the defendant for the sum of $5181.95.

The defendant claims that the acceptance of its check for $376.40, with the statement of account on the back and the receipt of the plaintiff "in full payment of the within account," constituted payment of the account. It also claims that in the trial in the United States court the $1100 check was introduced in evidence, the application of it was determined, that it was applied upon the items outside the contract, and that the judgment was an adjudication that the amount of the $1100 check should be credited upon the items involved here.

A debtor making a voluntary payment to a creditor may direct its application to such part of his indebtedness as he sees fit and the creditor must comply with the direction if he accepts the money. On February 20 the defendant, be-

ing indebted on an account only part of which was due, made payment to the plaintiff of an amount less than the part of the indebtedness which was due. It had a right to apply the payment on the part which was not due if it had wished to. If it had done so and the creditor had accepted the money on those terms the latter would be bound to apply it in that way. The debtor, however, made no application of the payment. It was simply a general payment on account, and the creditor had a right, in the absence of such direction, to presume that the payment was made on account of the indebtedness which was due. Only one small item involved in this suit, amounting to $153.99, had been delivered at that time, and that item was not due. However, when the defendant sent the check for $376.40, it directed the application of the $1100 which it had previously paid, to the items of account involved in this case. Even conceding that it had no right to do this without the plaintiff's consent and that the application could not be changed by the mere will of the debtor, still the application of the payment might be changed by the mutual agreement of the debtor and creditor. When the defendant sent the check for $376.40 on June 15, 1912, with a statement of particular items of account, crediting the $1100 previously paid to those items, stating that the check was to be received in full of the account consisting of those items, asking that if it was not correct it should be returned without alteration and the difference stated, containing a receipt of the amount stated in the check in full payment of the account, it necessarily constituted a proposition to the plaintiff to change the application of the $1100 and apply it to the items named. When the plaintiff accepted the check offered upon these conditions it must be held to have assented to these conditions and to have received the check, together with the $1100 previously paid, in full payment of the account. If it accepted the check it was necessarily upon the terms proposed. It might have objected to the check, but it could not, by its

own will, modify the terms on which it was offered. "If a check is offered under such circumstances as amount to a condition that it is to be received in full payment of the demand, an acceptance will satisfy the demand, although the creditor protests at the time that it is not all that is due him or that he does not accept it in full satisfaction of his claim. An acceptance in such a case is an acceptance of the condition notwithstanding any protest he may make to the contrary." (*Snow* v. *Griesheimer,* 220 Ill. 106; *Ostrander* v. *Scott,* 161 id. 339.) There was no dispute here as to the amount due. There never was any dispute between the plaintiff and the defendant as to their transactions outside the contract for the delivery of the 20,000 tons of coal. The defendant, in making the conditional offer of the check, was not proposing to pay the debt with a smaller amount than was due. Its proposition was to apply certain payments made on the general account to the particular items of the indebtedness. The interest of no third party was involved. Nobody was concerned except the debtor and creditor themselves, and the parties were at perfect liberty to make such an agreement if they saw fit to do so.

It is manifest from an examination of the record that the $1100 was not applied in the suit in the United States court as a payment upon the contract for the delivery of the 20,000 tons of coal. The declaration in that case did not show what was involved and proof was made of the evidence introduced on the trial. It was shown in that trial that the defendant had delivered to the plaintiff between the date of the contract and January 1, 4686.15 tons of coal, amounting, at the agreed price, to $5038.32, and that this had all been paid before February 20, 1912. After January 1, 3262.02 tons were delivered, amounting to $3506.77, which had not been paid for. The total amount of all coal, of every kind, shipped by the plaintiff to the defendant, whether under the contract or otherwise, was shown to be $12,231.92, and the total amount of all pay-

ments made was shown to be $8714.83. The vice-president of the plaintiff testified that the balance that had not been paid was $3523.08. The claim of the plaintiff for damages for failure to order the 2500 tons of coal monthly, under the evidence, giving the plaintiff its full claim, was under $1400 and the interest on the delayed payments was less than $175. These sums amount to $5098.08, while the judgment in the United States court was for $5181.95. This takes account of the $1100 check and the $376.40 check, and it also takes account of the items involved in the present suit, and shows that when the judgment was rendered in the United States court there were no unadjudicated transactions between the parties. While the question as to what was adjudicated in the United States court is a question of fact, we can look into the evidence to determine whether there was any evidence to justify the jury in this case in finding that the defendant had credit in the case in the United States court for the $1100 on the contract for delivery of 20,000 tons. When we do so we find no such evidence, but that clearly the verdict in that case, allowing the plaintiff everything which the evidence tended to prove, could not have been reached if only the contract for delivering the 20,000 tons had been considered and the $1100 check applied on that contract. The verdict could not have been based on the advanced price of coal during the months of January and February, in which the last 3262.02 tons were delivered, because there was no evidence before the jury as to what that price was. The offer made to prove the market price during that period was rejected by the court.

The court should have given the peremptory instruction to find for the defendant.

The judgments of the Appellate Court and the municipal court are reversed and the cause is remanded to the latter court.                    *Reversed and remanded.*