CENTRAL BLACKTOP COMPANY, INC., Plaintiff-Appellant, v. THE TOWN OF CICERO *et al.*, Defendants-Appellees (The Town of Cicero *ex rel.* Central Blacktop Company, Inc., Plaintiff-Appellant, v. Municipal Paving Company *et al.*, Defendants-Appellees).

First District (5th Division)   No. 86—2358

Opinion filed January 29, 1988.—Rehearing denied March 2, 1988.

McNeela & Griffin, Ltd., of Chicago (Edward P. McNeela, of counsel), for appellees.

Alan L. Stefanik, of Di Monte & Lizak, of Chicago, and Colleen Loftus-Hopkinson and John P. Loftus, both of Loftus & Loftus, of Niles, for appellant.

JUSTICE LORENZ delivered the opinion of the court:

This action was brought by Central Blacktop Co., Inc. (Central),

against the Town of Cicero, a municipal corporation (Cicero), and Municipal Paving Co. and North American Road Builders, a joint venture (joint venture), and Fidelity & Deposit Company of Maryland (Fidelity). The complaint sought money due on a public road construction project. Central sued the joint venture and Cicero for the sum of $103,614.25[1] for paving materials and labor. It also sued Fidelity for relief under the bond that had been posted and for bad faith in not settling the claim.

After trial the circuit court entered judgment in favor of defendants, holding that the plaintiff had been paid in full but had misapplied the funds. It also granted Fidelity's motion for summary judgment on the bad-faith count of plaintiff's complaint.

Central appeals from the judgment order entered against it and seeks reversal of that order. On appeal Central raises the following issues: (1) whether the trial court abused its discretion in finding that Central knew of the source of the payment; (2) whether a "special equity" existed between Cicero and Central; and (3) whether there exists a material issue of fact as to surety's conduct of alleged bad faith in investigating Central's claim.

The joint venture was a general contractor hired by Cicero to perform road construction. Central was the subcontractor that provided labor and materials to the road construction project. It is undisputed that Cicero tendered a check to the joint venture for such work. The joint venture contends that such payment was then made to Central with the understanding that the payment was to be applied to the Cicero account. Whereas Cicero contends that it received direction to apply such funds to other outstanding balances owed to Central by the joint venture.

The following facts are pertinent to our disposition of this cause. Central filed a complaint seeking recovery for paving materials and labors furnished for a road construction project in the Town of Cicero (project). Count I of Central's complaint sought to foreclose a mechanic's lien against public funds pursuant to section 23 of the Illinois Mechanics' Liens Act. (Ill. Rev. Stat. 1985, ch. 82, par. 23.) Count II of the complaint sought recovery on the payment bond written by Fidelity and posted for the project pursuant to the requirements of sections 1 and 2 of "An Act in relation for bonds ***" (the Illinois Bond Act.) (Ill. Rev. Stat. 1985, ch. 29, pars. 15, 16). Count III of Central's complaint alleged a breach of contract action by the joint venture,

---

[1]Prior to trial the *ad damnum* of the complaint was reduced from $132,814.80 to $103,614.25 by order of court of January 17, 1984, on plaintiff's motion..

which had contracted with Central to furnish the road paving materials and labor.

All defendants filed answers to Central's complaint. In addition, Fidelity filed third-party complaints for indemnification against certain persons who had agreed to indemnify it against loss on the bond. During the pendency of these proceedings and prior to commencement of the trial, the joint venture filed for bankruptcy. Central obtained a modification of the stay order allowing this matter to proceed.

When discovery was completed, Fidelity and Cicero filed amendments to their answers to Central's complaint. These defendants raised the affirmative defenses of application of payments and special equity. It was alleged that Cicero made a payment under its contract with the joint venture on November 18, 1981, in the amount of $145,000. Defendants further alleged this payment was deposited into the checking account of North American Road Builders, Inc., and was the source of the funds that paid a $111,555.67 check of North American dated November 17, 1981, which was allegedly issued and delivered to Central in payment for labor and materials furnished by Central for the project. Fidelity and Cicero maintained they had a special equity in these funds and were entitled to have the North American check of November 17, 1981, applied in payment of the joint venture's account for material and labor furnished by Central for the project.

The following facts were adduced at trial. From April 12, 1981, through March 12, 1982, Central and North American Road Builders did business with each other on several occasions. In the fall of 1981, North American Road Builders and Municipal Paving formed the joint venture to bid on certain road repair work contemplated by Cicero. In bidding on the Cicero job, the joint venture was required to furnish a contract bond with Fidelity, and upon being awarded the contract for road repairs, the joint venture furnished to Cicero its contract bond, which was in full force and effect at all times pertinent to this litigation.

The evidence established that pursuant to its contract with Cicero, an oral agreement between the joint venture, as general contractor for Cicero road repairs, and Central, as subcontractor, was entered into whereby Central was to furnish materials and labor for the Cicero work. The evidence further established that because North American Road Builders' credit had been previously approved by Central, and because North American Road Builders was an active customer of Central, no separate account was set up on Central's books for the joint venture/Cicero job to distinguish material and labor fur-

nished to the joint venture from those purchases which were strictly North American Road Builders' purchases. The evidence established, therefore, that purchases for all jobs were listed on a single running open account on Central's books. In addition, the North American Road Builders' ledger book also fails to separate the job records as to those which were joint venture entries from those which are solely North American Road Builders' accounts.

From October 6, 1981, to on or about November 18, 1981, Central furnished labor, materials, and equipment for the Cicero job on 16 different dates as evidenced by invoices which were introduced at trial. The total amount owing on these invoices is $154,136.50. The testimony established that Central's customary practice was to make out a material ticket for each delivery or pickup, listing type and quantity of materials and the job for which it was furnished. When the delivery tickets were picked up they would be signed by the customer's driver or employee. Although such delivery tickets would then be kept by Central as part of its business records, and for purposes of preparing invoices, no such delivery tickets signed by the joint venture employees were produced, except for 13 load tickets dated November 18, 1981, even though the Cicero job included deliveries or pickups on 16 separate dates from October 6, 1981, to November 18, 1981.

The testimony of Leroy Lawniczak, Cicero's treasurer in 1981, and of John Kurcz, clerk in the Cicero treasurer's office, was offered by Cicero and Fidelity. Both testified that they had phone calls from Central in November 1981 inquiring when a payment would be made to the joint venture on the road repairs contract and that the caller was informed that a payment of $145,000 would be made on November 18, 1981. The Cicero check in the amount of $145,000, dated November 18, 1981, and payable to joint venture, was admitted into evidence by stipulation at the commencement of the trial.

John Goelitz, president of North American Road Builders, testified that Henry Loukota, president of Central, phoned him on November 17, 1981. Loukota advised Goelitz that Cicero had just told him that the joint venture would receive a payment of $145,000 on November 18, 1981, from Cicero. Loukota told Goelitz to prepare a check payable to Central in the sum of $111,555.67 immediately and deliver it to Central. Goelitz testified that Loukota warned that if Central did not get this payment the same day, then North American Road Builders would be put out of business. Goelitz further testified that Loukota told him Central would apply this payment of $111,555.67 in whatever way it chose to apply it, even though Goelitz and Cynthia Taube, officer manager of North American Road Build-

ers, both testified that they told Central the payment had to be applied to Cicero invoices. Loukota denied this conversation. Loukota further denied any conversation with anyone in the Cicero treasurer's office and denied that Goelitz and Taube at any time directed him to apply the $111,555.67 payment to Cicero invoices.

Further contradictory evidence was offered as to the circumstances surrounding the preparation and alleged delivery of summary sheets on North American Road Builders stationery. These summary sheets list City of Evanston, Old Orchard Shopping Center, Hillside School District, Indian Head Park, and Village of Homewood balances. Joe Benson, comptroller of Central in 1981, testified that these summary sheets were given to him on November 17, 1981, together with the $111,555.67 check by Taube. However, Taube testified that on November 17, 1981, she gave Benson only the check for $111,555.67, and that she did not then, or at any other time, deliver the summary sheets to Benson or anyone at Central.

Central also offered final waivers for the five jobs listed in the summary sheets as evidence of its application of the $111,555.67 payment to these accounts. In addition, Benson testified that on November 17, 1981, Goelitz asked for the final waivers on four of the jobs listed in the summary sheets. These waivers, dated November 24, 1981, were prepared and delivered to him.

Before the close of the trial, Central offered a 15-page summary into evidence, which it contends is a listing by North American Road Builders of all outstanding account balances with Central as of the end of 1981. In rebuttal, Goelitz testified that these summary lists were prepared as internal office summaries and that they were not given to Central at any time. Nevertheless, Central offered these summaries as proof that as of the end of 1981, North American Road Builders records showed that all of the Cicero invoices remained unpaid. Central also referred to two check stubs, which directed payment of two February 1982 checks to Cicero's account.

After hearing closing arguments the trial court took the matter under advisement. On December 19, 1985, the trial court heard arguments of counsel on Fidelity's motion for summary judgment as to count IV of Central's complaint, alleging bad faith. At the conclusion of this hearing, the trial court took this aspect of the case under advisement as well.

On July 28, 1986, the trial court entered a 23-page opinion and order. The trial court ruled that Central was not entitled to any recovery because Fidelity and Cicero had a special equity in the $145,000 that was paid on November 18, 1981, to the joint venture. Further,

the court held that Central had an obligation to apply the $111,555.67 check to the outstanding invoices on the project. The court found that Central had been fully paid and was not entitled to recover either pursuant to section 23 of the Illinois Mechanics' Lien Act or the Illinois Bond Act. The court also ruled in favor of Fidelity on count IV of Central's complaint.

OPINION

■ In resolving the crucial inquiry of whether Central knew of the source of the $111,555.67 check, the trial court made the following findings:

> "The court finds from all the credible evidence that a phone conversation between Loukota of CENTRAL and Lawniczak, Treasurer of Town of CICERO took place on or about November 17, 1981, that from said conversation Loukota knew a payment of $145,000 would be made to the JOINT VENTURE on the next day, that Loukota phoned NORTH AMERICAN ROAD BUILDERS and demanded that Goelitz make payment to CENTRAL of the sum of $111,555.67 on November 17, 1981, and that NORTH AMERICAN ROAD BUILDERS issued its check in that sum under pressure from Loukota acting on behalf of CENTRAL, and that on said date the balance shown on the NORTH AMERICAN BOARD [sic] BUILDERS account with CENTRAL was $528,931.95, with the last prior payment having been credited on October 26, 1981, and before that payment credited on September 29, 1981. The court finds that NORTH AMERICAN ROAD BUILDERS account with CENTRAL was seriously delinquent on November 17, 1981 when the said conversations with CICERO and with Goelitz, and CENTRAL, occurred. The court finds therefore that on November 17, 1981 when payment of $111,555.67 was made CENTRAL knew the source of funds from which said check would be paid."

These findings are supported by the record. Where a trial court's fact findings are not against the manifest weight of the evidence, they must be accepted on review. (*Magnone v. Chicago & North Western Transportation Co.* (1984), 126 Ill. App. 3d 170, 466 N.E.2d 1261.) In light of the evidence presented, the trial court's findings are affirmed.

■ The next issue raised by Central concerns the relationship between itself and Cicero. The law in Illinois is well established that a debtor can direct how payments to a creditor are to be applied. (*Royal Colliery Co. v. Alwart Brothers Coal Co.* (1916), 276 Ill. 193,

114 N.E. 499.) The special equity defense must necessarily be applied if the above-mentioned findings of the lower court are accepted. If Central knew of the source of the funds, they must comply with the directions given at that time.

■■ The same rules of law, as mentioned above, apply to the surety, Fidelity. Where the creditor knows the source of the funds from which contractor makes payment, the surety has a right to have that payment applied to the account for which material was furnished and that, therefore, as between the creditor and the surety, the surety is released from its obligation to the creditor under the bond. (*Alexander Lumber Co. v. Aetna Accident & Liability Co.* (1921), 296 Ill. 500, 129 N.E. 871.) Here, given the findings of the trial court, Fidelity should be released.

■■ It might be noted that the allegations of bad faith directed toward the surety are not borne out by the record of the trial court. Suffice it to say that Fidelity has been actively pursuing this matter since the time it received its notice of lien. There is no evidence that Fidelity's participation is anything but a good-faith effort.

For the foregoing reasons the judgment of the circuit court of Cook County is affirmed.

Affirmed.

SULLIVAN and MURRAY, JJ., concur.