2009 UT App 307

**Kang S. PARK and Marsha Park, Plaintiffs and Appellees,**

v.

**Gary B. STANFORD, Defendant and Appellant.**

No. 20080574–CA.

Court of Appeals of Utah.

Oct. 29, 2009.

---

Russell S. Walker, Reid W. Lambert, and Anthony M. Grover, Salt Lake City, for Appellant.

Keith W. Meade and Bradley M. Strassberg, Salt Lake City, for Appellees.

Before Judges GREENWOOD, DAVIS, and THORNE.

## OPINION

GREENWOOD, Presiding Judge:

¶ 1 Appellant Gary B. Stanford appeals the trial court's grant of summary judgment in favor of Appellees Kang S. and Marsha Park. In particular, Stanford argues that summary judgment was inappropriate because the amount of his liability on the guaranty was ambiguous and because the trial court erred in determining that he was not entitled to credit toward his personal guaranty for payments he made prior to this action. Stanford also argues that even if summary judgment was appropriately granted, we should remand for the trial court to reduce the judgment entered against him in light of Utah Code section 57–1–32. We affirm.

## BACKGROUND

¶ 2 The Parks owned commercial real estate in Ogden, Utah (the Property) that, as of March 1994, was encumbered by a trust deed securing an obligation of Kang S. Park to Security Mutual Life Insurance Company with a balance owed of approximately $266,484.40 (the Security Mutual Note). In April 1994, Stanford and Richard Buckway entered into a real estate purchase contract with the Parks (the REPC) whereby they agreed to pay $1,000,000 to the Parks to purchase the Property.[1] In conjunction with the REPC, Stanford personally guaranteed "the payment of $500,000 plus interest." He also assumed liability on the Security Mutual Note. After execution of the REPC, the parties continued to negotiate terms for the sale of the Property, ultimately resulting in a trust deed and note executed July 1995, (the 1995 Trust Deed Note), between the Parks as lenders and Snowmass, LC—a Utah limited liability company of which Stanford was a member—as Borrower. Snowmass also assumed liability on the Security Mutual Note. In the 1995 Trust Deed Note, Stanford again personally guaranteed partial payment:

Stanford agrees to unconditionally guarantee the payment of th[e 1995 Trust Deed N]ote, but in no event shall ... Stanford's liability (excluding portions thereof attributable to interest and costs) when added to any deficiency judgment which may be entered against him by virtue of his guaranty of the Security Mutual [Note] (excluding interest and costs), exceed the sum of FIVE HUNDRED THOUSAND DOLLARS ($500,000).

¶ 3 In 1997, the parties amended the 1995 Trust Deed Note to provide that any notices of default could be sent directly to Stanford. When Snowmass missed several payments, the Parks sent Stanford requests for payment. These payments were ultimately made. After Snowmass further "defaulted in a number of material respects, including the failure to make payments under the [1995 Trust Deed] Note," the Parks filed suit against Stanford seeking specific performance of his personal guaranty.

¶ 4 The trial court held three separate hearings—March 2006, February 2007, and April 2008—in an attempt to resolve the Parks' various motions for summary judgment. At the beginning of the March 2006 hearing, the trial court noted that after reading the parties' memoranda, it was uncomfortable granting summary judgment because (1) Stanford's guaranty in the 1995 Trust Deed Note was "ambiguous, especially as it relates to how the Security Mutual [N]ote is handled," and (2) it appeared that there may be questions of fact regarding "whether or not Mr. Stanford should have credit for sums that were paid prior to th[e] time where demands were made directly to him as opposed to [Snowmass]." After further argument by both parties, the trial court granted partial summary judgment in favor of the Parks, deciding that whether Stanford was entitled to credit for past payments is purely a question of law and that Stanford was not entitled to credit for these payments because he failed to notify the Parks that he intended them to be credited against his personal guaranty. The trial court refused

1. Stanford bought the Property with his business partner at that time, Richard Buckway. However, Buckway is not a party to this appeal and, for the reader's convenience, has been omitted from this opinion except where necessary for clarity.

to grant full summary judgment, however, due to issues involving the Security Mutual Note. The trial court ultimately granted the Parks' request for full summary judgment at the April 2008 hearing because Bank of Utah, as custodian for the Kang S. Park IRA, had purchased all of Security Mutual's interests under the Security Mutual Note and agreed to waive any deficiency judgment thereunder to which they might otherwise be entitled. As a result, Stanford had no potential liability on the Security Mutual Note.[2] Because the amount owing under the 1995 Trust Deed Note was undisputedly in excess of $500,000, the trial court entered judgment in favor of the Parks for $500,000 in principal plus interest, fees, and costs, totaling $1,009,872.35. Stanford appeals.

## ANALYSIS

### I. Summary Judgment

¶ 5 The thrust of Stanford's appeal is that the trial court erred in granting summary judgment because either the court made legal errors or there existed material factual disputes precluding summary judgment. Summary judgment is appropriately granted where there are no material facts in dispute and the moving party is entitled to judgment as a matter of law. *See* Utah R. Civ. P. 56(c). "[A] motion for summary judgment may not be granted if a legal conclusion is reached that an ambiguity exists in the contract [at issue] and there is a factual issue as to what the parties intended." *Peterson v. Sunrider Corp.*, 2002 UT 43, ¶ 14, 48 P.3d 918 (internal quotation marks omitted). We "review[ ] a trial court's legal conclusions and ultimate grant or denial of summary judgment for correctness, and view[ ] the facts and all reasonable inferences drawn therefrom in the light most favorable to the nonmoving party." *Orvis v. Johnson*, 2008 UT 2, ¶ 6, 177 P.3d 600 (citation and internal quotation marks omitted).

### A. Integration

¶ 6 Stanford contends that the trial court incorrectly concluded that the 1995 Trust Deed Note is fully integrated, arguing that several documents evidencing the parties' negotiations should be included in interpreting Stanford's personal guaranty. Specifically, Stanford argues that these documents demonstrate that the parties intended to limit the amount of his guaranty to a maximum of $500,000 *inclusive of* interest, fees, and costs. Because parol evidence is not allowed to interpret an integrated, unambiguous agreement, the first step in deciding whether to consider extrinsic evidence is determining whether the 1995 Trust Deed Note is integrated. *See Tangren Family Trust v. Tangren*, 2008 UT 20, ¶ 11, 182 P.3d 326.

> To determine whether a writing is an integration, a court must determine whether the parties adopted the writing as the *final and complete* expression of their bargain. Importantly, ... when parties have reduced to writing what appears to be a complete and certain agreement, it will be conclusively presumed, in the absence of fraud, that the writing contains the whole of the agreement between the parties.

*Id.* ¶ 12 (citations and internal quotation marks omitted). In *Tangren Family Trust v. Tangren*, 2008 UT 20, 182 P.3d 326, the supreme court reiterated that "[w]hether a contract is integrated is a question of fact reviewed for clear error." *Id.* ¶ 10. Notwithstanding that standard of review, the *Tangren* court noted that extrinsic evidence would be allowed on the issue of integration, despite "a clear integration clause, where the contract is alleged to be a forgery, a joke, a sham, lacking in consideration, or where a contract is voidable for fraud, duress, mistake, or illegality." *Id.* ¶ 15. The *Tangren* court further disavowed prior cases that may have allowed extrinsic evidence outside the enumerated types of allegations, holding that "we will not allow extrinsic evidence of a separate agreement to be considered on the question of integration in the face of a clear integration clause." *Id.* ¶ 16.

---

2. The Judgment ordered the Parks to endorse the Security Mutual Note as follows: "The right to obtain a deficiency judgment based on this Note has been waived pursuant to the judgment entered" in this case.

¶ 7 Before the trial court, the Parks argued that the 1995 Trust Deed Note was fully integrated, particularly in light of the following clause:

This [1995 Trust Deed] Note has been issued pursuant to and .is secured by that certain Deed [entered contemporaneously with the 1995 Trust Deed Note] between Borrower and Lender (the "Security Instruments"). Such Security Instruments and all other instruments evidencing or securing the indebtedness hereunder are hereby made part of this Note and are deemed incorporated herein in full.

Stanford's argument, in part, is that prior writings and negotiations between the parties should be admitted to determine the extent of Stanford's guaranty. Under *Tangren*, this type of extrinsic evidence is not admissible where the agreement appears on its face to be integrated.

¶ 8 Stanford further argues, however, that the 1995 Trust Deed Note was not fully integrated, but instead, by its express terms, the 1995 Trust Deed Note "incorporated" all the documents previously entered into between the parties, including a series of letters sent by the Parks' attorney prior to execution of the 1995 Trust Deed Note. Stanford further contends that these letters render his guaranty liability amount ambiguous because, in contrast to the 1995 Trust Deed Note, the letters appear to cap Stanford's guaranty liability at $500,000 inclusive of interest, fees, and costs. Stanford also appears to argue that the prior letters constitute "other instruments evidencing or securing the indebtedness hereunder," as stated in the 1995 Trust Deed Note.

¶ 9 While the trial court did not explicitly find that the 1995 Trust Deed Note was integrated, it implicitly did so. The 1995 Trust Deed Note—and the "other instruments evidencing or securing the indebtedness [t]hereunder"—"appears to be a complete and certain agreement," *see id.* ¶ 12, between the Parks and Stanford regarding Stanford's personal‧ liability. Accordingly, we "conclusively presume[ ] . . . that [it] contains the whole of the agreement between the parties." *See id.* Furthermore, the prior letters are not instruments securing the debt as is the contemporaneous trust deed. At best, they reflect negotiations culminating in and replaced by the 1995 Trust Deed Note and address the same types of terms as those ultimately included in the 1995 Trust Deed Note. Having determined that the trial court did not err in finding the 1995 Trust Deed Note to be integrated, our discussion turns to a correctness review of the trial court's interpretation of the 1995 Trust Deed Note.

### B. Ambiguity and the Parties' Intent

¶ 10 Once a court has determined that a contract is fully integrated, it may not rely on parol evidence in making its initial decision of whether the contract is facially ambiguous. *See id.* ¶ 11. "A contractual term or provision is ambiguous 'if it is capable of more than one reasonable interpretation because of uncertain meanings of terms, missing terms, or other facial deficiencies.'" *Daines v. Vincent*, 2008 UT 51, ¶ 25, 190 P.3d 1269 (quoting· *WebBank v. American Gen. Annuity Serv. Corp.*, 2002 UT 88, ¶ 20, 54 P.3d 1139). If the contract is facially unambiguous, we are bound to determine the parties' intent solely "from the plain meaning of the contractual language." *Flores v. Earnshaw*, 2009 UT App 90, ¶ 8, 209 P.3d 428 (internal quotation marks omitted). Furthermore, when reviewing a trial court's interpretation of a contract, " 'we defer to the trial court on questions of fact but not on questions of law.'" *Id.* ¶ 7 (quoting *Peterson v. Sunrider Corp.*, 2002 UT 43, ¶ 14, 48 P.3d 918). And finally, "[w]hether a contractual term or provision is ambiguous on its face is a question of law," to be reviewed for correctness. *Id.* (citing *Daines*, 2008 UT 51, ¶ 25, 190 P.3d 1269).

¶ 11 Stanford's contention regarding ambiguity in the 1995 Trust Deed Note focuses on integration and the parties' prior negotiations and letters: Stanford makes no extensive argument that the language within the four corners of the 1995 Trust Deed Note renders his personal guaranty amount ambiguous. The guaranty provision in the 1995 Trust Deed Note clearly states that Stanford's liability will be $500,000 *exclusive of* interest, fees, and costs. Because none of the terms in the guaranty provision are "ca-

pable of more than one reasonable interpretation because of uncertain meanings of terms, missing terms, or other facial deficiencies," *see Daines*, 2008 UT 51, ¶ 25, 190 P.3d 1269 (internal quotation marks omitted), we conclude that the guaranty provision in the 1995 Trust Deed Note is unambiguous as a matter of law. Summary judgment on this issue was therefore proper. Furthermore, because there is no dispute that the amount owed under the 1995 Trust Deed Note exceeded $500,000, we determine that Stanford's personal liability was correctly calculated at $500,000 plus interest, fees, and costs, for a total of $1,009,872.35.

## C. Credit for Past Payments

¶ 12 Stanford also argues that the trial court erred as a matter of law in concluding that he was not entitled to credit toward his personal guaranty for payments he made prior to the filing of this action. Stanford asserts that "[w]hen [he] made personal payments to the Parks, he did so believing that the Parks would credit those payments toward[ ] his [personal] guarant[y]." Implicit in this argument is the notion that Stanford made these payments in his capacity as a guarantor, as opposed to in his capacity as Snowmass's sole member. Whether Stanford is entitled to credit for these payments against his personal guaranty, based on his unexpressed belief that these payments would be so credited, presents an issue of first impression in Utah.

¶ 13 Stanford cites *Monmouth Plumbing Supply Co. v. McDonald*, 106 N.J.L. 1, 147 A. 627 (1929), arguing the rule in Utah should be that "when a guarantor makes a payment directly to the lender, that payment is credited against the guarantor's guaranty limit." However, as the Parks note in their brief, no court in any jurisdiction has cited *Monmouth* for any purpose, let alone for the rule that Stanford suggests. Alternatively, the Parks cite *Lee v. Yano*, 93 Hawai'i 142, 997 P.2d 68 (Ct.App.2000), and argue that the rule stated therein regarding appli-

cation of payments from a guarantor to a lender should be adopted in Utah. In *Lee*, the Hawaii Court of Appeals cited secondary sources for the proposition that,

> "[a]s a general rule, a third person who is secondarily liable on a debt, such as a guarantor, surety, or indorser, cannot control the application which either the debtor or the creditor makes of a payment, and neither the debtor nor the creditor need apply the payment in the manner most beneficial to such persons."

*Id.* at 76 (quoting 60 Am.Jur.2d *Payment* § 88 (2003)). Although *Lee* involved a slightly different factual scenario, we believe that this statement of the law is persuasive and should be adopted as Utah law. Exceptions to this rule may exist, as acknowledged by the Parks, where there is a differing contractual provision or an agreement to accept payment from a guarantor upon the express condition that it be applied toward the guaranty amount, notwithstanding the principal debtor's continued vitality. Thus, because Stanford, as guarantor, cannot unilaterally control the way in which these payments were treated by the Parks, the relevant inquiry is whether he and the Parks had an agreement regarding acceptance of these payments and their specific application.

¶ 14 However, even assuming that Stanford intended that these payments be credited toward his guaranty, there is no record evidence that he and the Parks had agreed to do so. In fact, the undisputed facts of record belie such an assertion, most notably: (1) in 1997 the parties amended the 1995 Trust Deed Note so as to allow notices of default to be sent to Stanford's personal attention; (2) from 1998 on, Stanford was the sole member of Snowmass; (3) although payments were made, some allegedly with money from Stanford's personal account, the Parks had no knowledge that Stanford intended these payments to be directed toward his personal guaranty; and (4) there was no agreement by the Parks to apply the payments to Stanford's guaranty.[3] Consequently, we affirm

---

3. Stanford cites *St. Paul Fire & Marine Insurance Co. v. Dakota Electric Supply Co.*, 309 F.2d 22, 25 (8th Cir.1962), and *Central Blacktop Co. v. Town of Cicero*, 166 Ill.App.3d 260, 116 Ill.Dec. 757,

519 N.E.2d 972, 976 (1988), arguing that "when a lender accepts a payment from a guarantor, and *knows that the payment has come from the guarantor*, the lender is required to apply that

the trial court's determination that Stanford is not entitled to credit toward his personal guaranty for these payments.

## II.  Utah Code section 57–1–32

¶ 15 Stanford argues that even if we affirm the trial court's grant of summary judgment, Utah Code section 57–1–32 requires that we remand this case to the trial court so that it may offset the fair market value of the Property against the judgment. Stanford did not preserve this argument below, but argues that we should nevertheless review it due to exceptional circumstances. *See State v. Holgate*, 2000 UT 74, ¶¶ 11–12, 10 P.3d 346 (reaffirming that "the exceptional circumstances exception is ill-defined and applies primarily to rare procedural anomalies" (internal quotation marks omitted)). The exceptional circumstances to which Stanford refers include that the facts implicating section 57–1–32 did not arise until after the judgment in this case was entered. Thus, in order to evaluate whether exceptional circumstances exist to justify our review of this unpreserved argument, we must first determine whether section 57–1–32 applies to the facts of this case.

¶ 16  Section 57–1–32 states, in pertinent part,

> At any time within three months *after any sale of property under a trust deed* as provided in Sections 57–1–23, 57–1–24, and 57–1–27, *an action may be commenced to recover the balance due upon the obligation for which the trust deed was given as security,* and in that action the complaint shall set forth the entire amount of the indebtedness that was secured by the trust deed, the amount for which the property was sold, and the fair market value of the property at the date of sale. Before rendering judgment, the court shall find the fair market value of the property at the date of the sale. The court may not render judgment for more than the amount by which the amount of the indebtedness with interest, costs, and expenses of sale, including trustee's and attorney's fees, exceeds the fair market value of the property as of the date of the sale.

Utah Code Ann. § 57–1–32 (Supp.2008) (emphases added).

¶ 17 We conclude that section 57–1–32 is not applicable. The Property was subject to two trust deeds: the first was to secure the Security Mutual Note, the second is the subject of this lawsuit and secures the 1995 Trust Deed Note. Although Stanford was a guarantor of both trust deed notes, this action involved only the 1995 Trust Deed Note. Eventually, Bank of Utah succeeded Security Mutual on the Security Mutual deed and conducted a foreclosure sale. Because that foreclosure was on the first trust deed, not the second trust deed involved in this case, section 57–1–32 is not implicated. That section places limitations on a deficiency action after a trust deed sale. *See id.* Bank of Utah and the Parks waived any right to seek a deficiency judgment against Stanford related to the foreclosed Security Mutual deed, so Stanford is precluded from invoking section 57–1–32's protections and certainly cannot do so in this action involving a different obligation. We accordingly conclude that there are not exceptional circumstances sufficient to justify our review of this otherwise unpreserved argument. *See Holgate*, 2000 UT 74, ¶ 11, 10 P.3d 346.

## CONCLUSION

¶ 18 We find no clear error in the trial court's implicit finding that the 1995 Trust Deed Note was integrated with respect to Stanford's personal guaranty. We also determine that the guaranty provision in the 1995 Trust Deed Note is unambiguous as a matter of law and, therefore, consideration of parol evidence is improper. We further conclude that Stanford is not entitled to credit against his personal guaranty for payments made to the Parks prior to this action because there is no evidence that the Parks agreed to such an arrangement and he cannot otherwise control the application of these payments. As a result, the trial court appropriately granted summary judgment for the

payment toward[ ] the guarantor's debt." (Emphasis added.) These cases are distinguishable because both were brought to recover under construction-related payment bonds and have different facts than in this case.

Parks. Finally, exceptional circumstances do not exist sufficient to justify our review of Stanford's argument regarding application of Utah Code section 57–1–32. Affirmed.

¶ 19 WE CONCUR: JAMES Z. DAVIS and WILLIAM A. THORNE JR., Judges.