2011 UT 41

**Kang S. PARK and Marsha Park, Plaintiffs and Appellees,**

v.

**Gary B. STANFORD, Defendant and Appellant.**

No. 20091082.

Supreme Court of Utah.

July 22, 2011.

Keith W. Meade, Bradley M. Strassberg, Salt Lake City, for plaintiffs.

Russell S. Walker, Reid W. Lambert, Anthony M. Grover, Salt Lake City, for defendants.

Chief Justice DURHAM, opinion of the Court:

## INTRODUCTION

¶ 1 This appeal concerns the application of payments made in connection with a real estate transaction between Dr. Gary B. Stanford and Kang and Marsha Park. The court of appeals held that payments submitted to the Parks could not be credited toward a personal guaranty Dr. Stanford had made on a note payable to the Parks. Noting that this appeal presents an issue of first impression, we disagree with the court of appeals' analysis and adopt a "reasonable basis test" governing the application of payments toward a personal guaranty. Further, we hold that genuine issues of material fact preclude summary judgment under the rule articulated in this opinion and that the record requires further development. We therefore reverse and remand for further proceedings.

## BACKGROUND

¶ 2 In April 1994, Dr. Stanford and Richard Buckway entered into a real estate purchase contract to buy commercial property in Ogden, Utah, from the Parks. Dr. Stanford and Mr. Buckway were members of Snowmass, L.C. (Snowmass), a limited liability company. In October 1994, the parties agreed to substitute Snowmass as purchaser of the property in lieu of Dr. Stanford and Mr. Buckway.

¶ 3 As managing members of Snowmass, Dr. Stanford and Mr. Buckway executed a trust deed note (the Note), under which Snowmass was the borrower and the Parks were the lenders. Dr. Stanford and Mr. Buckway also executed the Note in their individual capacities as guarantors. Dr. Stanford's personal guaranty on the Note

limited his liability to $500,000, excluding interest and costs.

¶ 4 In 1997, Dr. Stanford executed an amendment to the Note, signing individually and as "managing partner" of Snowmass. The amendment provided that notice of default on the Note "may be given" to Dr. Stanford and listed his mailing address. The following year, Mr. Buckway and Dr. Stanford terminated their business relationship, and thereafter Dr. Stanford was the sole member of Snowmass for many years.

¶ 5 After Snowmass continually failed to make payments on the Note, the Parks sued Dr. Stanford in 2002 to recover on his personal guaranty. The Parks later moved for summary judgment, asserting that none of the payments they had received on the Note were required to be applied to Dr. Stanford's personal guaranty. In opposition to the Parks' motion, Dr. Stanford contended that he made payments to the Parks in excess of $750,000 and that he had intended for these payments to be made in his capacity as guarantor. According to Dr. Stanford, had he known the Parks were not crediting these payments toward his personal guaranty, he would not have submitted them.

¶ 6 Dr. Stanford proffered various documents to demonstrate to the district court that the past payments completely extinguished his liability on his personal guaranty or, alternatively, that genuine issues of material fact precluded summary judgment. Among these documents were more than twenty notices from the Parks addressed to Dr. Stanford personally that requested immediate payment for amounts past due on monthly payments and that notified Dr. Stanford of late-payment penalties.[1] None of the letters was addressed to Snowmass or referenced Dr. Stanford's guaranty.

¶ 7 Dr. Stanford also pointed to the payments themselves as evidencing his intention to pay in his guarantor capacity and as precluding summary judgment. Dr. Stanford's affidavit testimony stated that he occasionally transferred money from his own funds to Snowmass's bank account to make payments to the Parks. He also proffered cashier's checks payable to the Parks. These checks named different remitters, including "Gary Stanford," "Snowmass Highlands/Dr. Stanford," "Snowmass," and "Snowmass Highlands Corp." One check indicated "Snowmass" as the remitter but was delivered to the Parks in a preprinted envelope listing "Gary B. Stanford, M.D., F.A.C.S." as the sender. Additionally, Dr. Stanford occasionally sent the Parks personal checks, six of which Dr. Stanford attached to his opposition to the Parks' summary judgment motion. Some of these checks contained a notation referencing the property's address or the Note. But none of the checks, either cashier's or personal, referenced Dr. Stanford's guaranty.

¶ 8 The district court granted summary judgment to the Parks, determining, "as a matter of law, that none of the payments made to date by Gary Stanford or Snowmass can be applied so as to reduce the $500,000.00 personal guaranty from Stanford to the [Parks]."[2] The district court further determined that the amount due on the Note exceeded $500,000. The court entered judgment against Dr. Stanford for $1,009,872.35, which reflected the $500,000 in guarantied principal, plus interest, fees, and costs. Dr. Stanford appealed.

¶ 9 In reviewing the district court's grant of summary judgment, the court of appeals noted that "[w]hether [Dr.] Stanford is entitled to credit for … payments against his personal guaranty, based on his unexpressed belief that these payments would be so credited, presents an issue of first impression in Utah." *Park v. Stanford*, 2009 UT App 307, ¶ 12, 221 P.3d 877. The court concluded that a guarantor may not unilaterally control the way in which a creditor applies the guarantor's payments unless there is evidence of "a differing contractual provision or an agreement [for the creditor] to accept payment

---

1. During the period that Mr. Buckway was a member of Snowmass, the Parks also addressed the letters to him.

2. Although the district court addressed several issues regarding Dr. Stanford's liability, the only issue before us on certiorari is whether past payments should be credited toward Dr. Stanford's guaranty liability.

from a guarantor upon the express condition that it be applied toward the guaranty amount." *Id.* ¶ 13. Because no evidence indicated the Parks had actual knowledge that Dr. Stanford intended for the past payments to apply to his guaranty; and because no agreement or contractual provision expressly required the Parks to make such an application, the court of appeals affirmed the district court's grant of summary judgment. We granted certiorari review and have jurisdiction under Utah Code section 78A–3–102(5) (Supp.2010).

## STANDARD OF REVIEW

¶ 10 "On certiorari, we review the decision of the court of appeals for correctness, giving no deference to its conclusions of law." *State v. White*, 2011 UT 21, ¶ 14, 251 P.3d 820.

## ANALYSIS

¶ 11 We granted certiorari to determine two issues. First, we must determine whether the court of appeals erred in holding that the Parks were not required to credit payments toward Dr. Stanford's guaranty obligation. Addressing this issue for the first time, we hold that the court of appeals applied the wrong test in its holding that payments may be credited toward a personal guaranty only when permitted by a prior agreement or contractual provision. Instead, we adopt a rule in which payments are credited toward a personal guaranty when the recipient of the payments has a reasonable basis to know the payments were submitted in satisfaction of the guaranty.

¶ 12 Second, we granted certiorari to determine whether the court of appeals erred in holding that there were no disputed issues of fact as to whether Dr. Stanford and the Parks had an agreement governing how payments were to be credited. Because we hold that an agreement or contractual provision is not a necessary condition to the application of payments toward a guaranty, we alter this inquiry and determine instead whether any genuine issues of material fact precluded summary judgment on the issue of whether the Parks had a reasonable basis to know that payments were submitted in satisfaction

of Dr. Stanford's guaranty. We hold that genuine issues of material fact preclude summary judgment, but also that the record requires further development in light of the rule we articulate in this opinion.

## I. PAYMENTS ARE CREDITED TOWARD A PERSONAL GUARANTY WHEN THE RECIPIENT HAS A REASONABLE BASIS TO KNOW THE PAYMENTS WERE SUBMITTED IN SATISFACTION OF THE GUARANTY

¶ 13 We have never squarely addressed under what circumstances a guarantor is entitled to credit payments toward a personal guaranty. To assist in our determination of an issue of first impression, we often look to guidance from other jurisdictions as well as authoritative materials. *See McLaughlin v. Schenck*, 2009 UT 64, ¶ 17, 220 P.3d 146; *Utah Local Gov't Trust v. Wheeler Mach. Co.*, 2008 UT 84, ¶ 14, 199 P.3d 949. The Parks and Dr. Stanford propose that we look to case law from other jurisdictions; not surprisingly, each party asks us to adopt a different rule of law. Accordingly, we first assess the legal rules that the Parks and Dr. Stanford ask this court to adopt, but then search for further support in fashioning an appropriate rule.

¶ 14 The Parks assert that the court of appeals correctly looked to Hawaii in adopting a legal principle suitable for Utah. The court of appeals was persuaded by the analysis in *Lee v. Yano*, 93 Hawai'i 142, 997 P.2d 68 (Haw.Ct.App.2000), in which the Hawaii Court of Appeals stated that, generally, " 'a guarantor . . . cannot control the application which either the debtor or the creditor makes of a payment, and neither the debtor nor the creditor need apply the payment in the manner most beneficial to such person[ ].' " *Id.* at 76 (quoting 60 Am.Jur.2d Payment § 126 (1987)). The court of appeals noted that, "[a]lthough Lee involved a slightly different factual scenario, we believe that this statement of the law . . . should be adopted as Utah law." *Park v. Stanford*, 2009 UT App 307, ¶ 13, 221 P.3d 877. Applying this rule, the court of appeals stated that

a guarantor such as Dr. Stanford may not "unilaterally control" the application of payments and must point to an agreement or contractual provision governing the application of a guarantor's payments. *Id.*

¶ 15 We find *Lee* to be inapplicable to the circumstances of this case. The issue in *Lee* was whether a guarantor could control the application of a *debtor's* payments when the debtor had provided no direction to the creditor regarding payment application. *Lee,* 997 P.2d at 75–76. Here, Dr. Stanford does not contend that the Parks should have let him control payments made by the debtor, Snowmass. Rather, he argues that payments made by *him,* in his *guarantor capacity,* should have been applied toward his personal guaranty. The court of appeals thus relied on an inapplicable principle of law in *Lee* that provides no guidance regarding the circumstances in which a guarantor may be entitled to credit for payments that the guarantor, not the debtor, has made.

¶ 16 On the other hand, Dr. Stanford asks us to adopt the reasoning set forth in *Monmouth Plumbing Supply Co. v. McDonald,* 106 N.J.L. 1, 147 A. 627 (1929). According to Dr. Stanford, *Monmouth Plumbing* articulates the rule that if a guarantor makes payments directly to a creditor, the creditor must credit those payments toward the guarantor's personal guaranty. Dr. Stanford contends that, according to the reasoning in *Monmouth Plumbing,* it is irrelevant whether the guarantor and creditor had an agreement or contractual provision controlling the application of the guarantor's payments; whether payments were made is the sole inquiry.

¶ 17 In *Monmouth Plumbing,* a father executed a guaranty on behalf of his son so that the son could obtain a credit account from a plumbing and heating business. *Id.* at 627. The father twice tendered payments directly to the business after his son failed to pay amounts due, and the father's total payments exceeded the amount of his guaranty. *Id.* The New Jersey Supreme Court affirmed the district court's judgment of nonsuit in favor of the father. *Id.* In doing so, it noted that "[t]he accepted rule is that the payment by the guarantor of the principal debt to the extent that it is covered by the contract of guaranty discharges him from any further liability thereon." *Id.* at 628 (citing 28 C.J. *Guaranty* § 164 (1922)).

¶ 18 Although *Monmouth Plumbing* is more factually similar to this case than is *Lee,* Dr. Stanford is incorrect in interpreting it as applying a strict rule of credit toward a personal guaranty. The analysis in *Monmouth Plumbing* does not dictate that a guarantor's payments must be applied toward a personal guaranty in all circumstances. In fact, *Monmouth Plumbing's* citation to *Corpus Juris* illuminates the true nature of its holding. The cited section of *Corpus Juris* states that "[w]here ... the guaranty is limited in amount and is of a continuing nature ... no payment will discharge the guarantor ... unless it is made in discharge of the guaranty and with *notice* to that effect." 28 C.J. *Guaranty* § 164 (emphasis added).

¶ 19 The requirement of notice undermines Dr. Stanford's contention that all payments by a guarantor are credited toward a personal guaranty, but also supports the *Monmouth Plumbing* result on the facts in that case. Although the New Jersey Supreme Court did not specifically state that the heating and plumbing business had notice that the father's payments were made in discharge of his guaranty, such notice was implicit. The father made the payments directly to the business, the business knew the father made the payments, and the father's identity as guarantor was distinct from his son's identity as debtor. *See Monmouth Plumbing,* 147 A. at 627.

¶ 20 We agree that notice is necessary before a creditor should be required to apply a guarantor's payments to a personal guaranty. But *Monmouth Plumbing* does not describe what form of notice is sufficient and appears not to have been generally relied on. As the court of appeals noted, "no court in any jurisdiction has cited Monmouth for any purpose." *Park,* 2009 UT App 307, ¶ 13, 221 P.3d 877. Accordingly, we look to other jurisdictions and authoritative materials to determine what form of notice is sufficient to require application of payments toward a personal guaranty. After review of

these materials, we hold that payments must be applied toward a personal guaranty if the recipient has a reasonable basis to know the payments were submitted in satisfaction of the guaranty.

¶ 21 This reasonable basis test finds significant support in case law from other states. For example, in *Bayer v. Lugar*, a guarantor made checks payable to the husband of a debtor, and the husband then indorsed the checks over to the creditor. 106 A.D. 522, 94 N.Y.S. 802 (1905), *aff'd mem.*, 186 N.Y. 569, 79 N.E. 1100 (1906). The court held that the guarantor was entitled to credit for payments because the creditor "had actual knowledge that the moneys paid by [the guarantor] . . . were the moneys contributed . . . in discharge of the obligation." *Id.* at 804. The court noted that the creditor would have been free to apply the payments as he saw fit if he had no "knowledge or *notice* . . . that the money was to be otherwise applied." *Id.* (emphasis added). But the court also recognized the general rule that "where the person receiving the money has knowledge of the source from which it comes, and that it is a payment upon a particular contract, the party . . . is bound to appropriate it to the purpose for which it was paid." *Id.* Such a rule comports with "equitable principles" in the application of payments. *Id.*

¶ 22 The Wisconsin Supreme Court has similarly stated that "[w]here a creditor accepts payment from a third person knowing it came from the guarantor, the payment must be applied in satisfaction of the guaranty." *Ivers & Pond Piano Co. v. Peckham,* 29 Wis.2d 364, 139 N.W.2d 57, 58 (1966); *see also Sorge Ice Cream & Dairy Co. v. Wahlgren,* 28 Wis.2d 220, 137 N.W.2d 118, 122 (1965) ("[I]f the creditor is aware of the source of the payment, he should apply it to the note guaranteed by the surety."). The Court of Civil Appeals of Texas adopted similar reasoning in *Warrior Constructors, Inc. v. Small Business Investment Co. of Houston,* 536 S.W.2d 382 (Tex.Civ.App.1976). There, the court held that it was "sufficient to require . . . payments be applied to the guaranteed portion of [a] debt" where "the creditor accepted the principal payments knowing that they originated in the guaran-

tor." *Id.* at 385. The court contrasted such circumstances with cases in which payments did not come directly from the guarantor, there was no direction as to the application of payments, or the creditor had no knowledge of the guarantor's intentions in making payments. *Id.* In our view, each of these considerations is relevant to the inquiry into whether a creditor has a reasonable basis to know that a payment should be applied toward a personal guaranty.

¶ 23 It is true that the discussed cases involved creditors who had actual knowledge that a guarantor was making a payment in the capacity as guarantor. In some, the intent of the guarantor was also clear. For example, the analysis in *Warrior Constructors* distinguishes the case from others in which creditors are unaware of "the intention of the guarantor in advancing the funds." *Id.* Yet these courts did not require an agreement or contractual provision governing the application of a guarantor's payments. Moreover, we believe that the circumstances surrounding a payment may, in some cases, sufficiently notify a creditor of a guarantor's intent.

■ ¶ 24 Authoritative materials discuss the application of debtors' payments in a manner supporting the adoption of a context-based rule. For instance, the general rule in the debtor-creditor context is that a debtor may direct application of payments to a particular debt. 15 WILLISTON ON CONTRACTS § 1795 (3d ed. 1972). Yet the debtor need not manifest this direction by express words to the creditor. Rather, "a manifestation of intent deduced from acts or from the circumstances of the case is as effective as if expressed in words." *Id.; see also Tayloe v. T. & S. Sandiford,* 20 U.S. (7 Wheat.) 13, 20, 5 L.Ed. 384 (1822) ("A payment may be attended by circumstances which demonstrate its application as completely as words could demonstrate it."). Similarly, the circumstances surrounding a guarantor's payments—such as whether the parties previously agreed to the application of payments, whether the guarantor made payments directly to the creditor, and whether the payments themselves indicated the intentions of the guarantor—may provide a

reasonable basis for the recipient to conclude that the guarantor has manifested intent to apply the payments in satisfaction of a personal guaranty.

¶ 25 In light of these principles, we believe there is a middle ground between the positions taken by the Parks and Dr. Stanford that more fairly determines whether payments should be credited toward a personal guaranty. Contrary to the Parks' arguments, a prior agreement or a contractual provision governing the application of a guarantor's payments is not required.[3] Nor, as Dr. Stanford contends, are payments made by a guarantor under all circumstances credited toward a guaranty. Such a rule would be unfair to creditors who may have no reasonable basis of knowing how to apply a payment.

¶ 26 We hold that a guarantor is entitled to credit toward a personal guaranty for past payments when a reasonable basis exists for the recipient accepting the payments to know they were submitted in satisfaction of the guaranty. We note that the court of appeals was faced with an issue of first impression with little law to guide it, but in view of our adoption of the reasonable basis test, its analysis cannot stand.

## II. SUMMARY JUDGMENT IS INAPPROPRIATE DUE TO GENUINE ISSUES OF MATERIAL FACT AND AN INSUFFICIENT RECORD

¶ 27 Having established the rule regarding the application of a guarantor's payments, we next determine whether the court of appeals erred in holding that the Parks were entitled to summary judgment. "We may affirm a grant of summary judgment upon any grounds apparent in the record." *Jensen ex rel. Jensen v. Cunningham,* 2011 UT 17, ¶ 36, 250 P.3d 465. Accordingly, we

look to the record to determine whether, in light of the reasonable basis test described above, there are no genuine issues of material fact and the Parks are entitled to judgment as a matter of law. UTAH R. CIV. P. 56(c).[4] For this purpose, we consider the "facts [in the record] and all reasonable inferences drawn therefrom in the light most favorable" to Dr. Stanford. *Orvis v. Johnson,* 2008 UT 2, ¶ 6, 177 P.3d 600 (internal quotation marks omitted).

¶ 28 Dr. Stanford argues that the following facts in the record raise genuine issues of material fact precluding summary judgment: (1) he personally intended that each payment made to the Parks would apply toward his guaranty liability; (2) he made checks payable to the Parks, including personal checks from his own account and cashier's checks, which occasionally listed him as the remitter; and (3) evidence in the record showing that the Parks knew Dr. Stanford made payments in satisfaction of his guaranty, including twenty late-payment letters from the Parks demanding immediate payment. We address each argument in turn.

¶ 29 First, we hold that Dr. Stanford's subjective intention that past payments made to the Parks would apply to his guaranty cannot raise a genuine issue of material fact sufficient to avoid summary judgment. The reasonable basis test incorporates the guarantor's *actions* and the recipient's reasonable understanding. A guarantor may not rely on unexpressed intentions to secure a favorable application of payments, but must instead point to facts that demonstrate a reasonable basis for the *recipient* of the payments to understand those intentions. Accordingly, Dr. Stanford's affidavit testimony that he intended his payments to apply to his personal guaranty and that he would not have made such payments if he had known he was not

3. However, we note that the existence of an agreement or contractual provision would be, at the very least, highly relevant. Nothing in this opinion prevents a party from contracting for more certainty than the reasonable basis test provides.

4. As noted above, we granted certiorari to determine "[w]hether the court of appeals erred in holding there were no disputed issues of fact as

to whether the parties had an agreement governing how payments were to be credited." Because we have adopted a reasonable basis test and have clarified that a prior agreement is not a necessary condition for a guarantor's payments to apply toward a personal guaranty, we shift the certiorari inquiry to apply the summary judgment standard in light of the rule articulated in this opinion.

receiving credit, is insufficient to reverse summary judgment in favor of the Parks.

¶ 30 Second, the checks Dr. Stanford has proffered may be considered in two categories: those that do not indicate he submitted them in his personal capacity, and those that do. We hold that the checks in the record that contain no indication that Dr. Stanford was submitting the payments in his personal capacity cannot raise a genuine issue of material fact under the reasonable basis test, given his dual capacity as an individual guarantor and as a principal of Snowmass. For example, Dr. Stanford highlights the transfer of his own money into Snowmass's account, followed by Snowmass's payments to the Parks from its own account. But without some further indication that the payments were from Dr. Stanford, instead of Snowmass, the Parks could not have had a reasonable basis to know how to apply them. In fact, there was a reasonable basis for the Parks to assume that payments made from Snowmass's account were made by Snowmass and should be applied to Snowmass's debt.

¶ 31 We conclude, however, that the cashier's checks listing Dr. Stanford as the remitter and the checks drawn on his personal account raise genuine issues of material fact under the reasonable basis test. For example, Dr. Stanford's personal checks to the Parks are all dated in 2003—one year after the Parks sued Dr. Stanford on his personal guaranty. It would be plausible to infer that a guarantor's payments after the filing of a creditor's lawsuit on the guaranty were submitted in satisfaction of the guaranty. Further, the cashier's checks contain different remitter notations—sometimes Snowmass, sometimes Dr. Stanford, and sometimes both. When these facts are viewed in a light most favorable to Dr. Stanford, a fact-finder could reasonably infer that the variance in the remitter notations indicates that some payments were submitted in satisfaction of the personal guaranty and some were not.

¶ 32 Third, although we disagree with Dr. Stanford's assertion that the record is "replete" with evidence that the Parks knew of Dr. Stanford's intentions, we hold that the late-payment letters from the Parks to Dr. Stanford raise genuine issues of material fact under the reasonable basis test. Although the letters make no reference to Dr. Stanford's guaranty, they are not addressed to Snowmass, but rather to the guarantors, Dr. Stanford and Mr. Buckway. The Parks argue they sent the notices to Dr. Stanford because he signed an amendment to the Note, which allowed notices of Snowmass's default to be sent to his personal address. However, many of the Parks' notices were sent in 1995 and 1996, before Dr. Stanford executed the 1997 amendment. We are bound to look at these facts in a light most favorable to Dr. Stanford. Under this standard, it is plausible to infer that the Parks' late-payment letters reflect a demand on their behalf that Dr. Stanford submit payments in his guarantor capacity.[5]

¶ 33 When we clarify the law or adopt legal principles, we may remand for further proceedings so that the parties may develop the record in light of the newly articulated rule. *See Downing v. Hyland Pharmacy*, 2008 UT 65, ¶ 13, 194 P.3d 944 (reversing summary judgment and remanding to the trial court for proceedings, which would "presumably include the development of the record" on a newly articulated rule of law); *Uintah Basin Med. Ctr. v. Hardy*, 2002 UT 92, ¶ 18, 54 P.3d 1165 ("As the record has been inadequately developed on the issue of the reasonableness of the contract's duration, we remand to permit the district court to allow further development of the record . . . ."). Development of the record is particularly warranted where lower courts have applied a different rule of law to the facts and the parties have not had an opportunity to develop the record with an eye toward the newly articulated rule. *See, e.g., Utah Local Gov't Trust v. Wheeler Mach. Co.*, 2008 UT 84, ¶¶ 7, 14, 36, 199 P.3d 949 (holding that the court of appeals applied the

---

5. We note, however, that evidence of payments from Snowmass *following* the Parks' notices could change the calculus as to whether the late-payment notices raise genuine issues of material fact, particularly given the letters' reference to past-due "monthly payment[s]." As discussed below, the record is insufficiently developed for this court to make that determination.

wrong test on an issue of first impression and remanding because relevant facts were "not evident in the record").

¶ 34 This case is a prime candidate for remand to develop the record. Although we find that the payments listing Dr. Stanford as remitter or drawer and the late-payment letters raise genuine issues of material fact under the reasonable basis test, we also note that the record before us is sparse. In fact, Dr. Stanford did not submit to the district court "all payments made so as not to be voluminous." Dr. Stanford further submitted a ledger of payments that, standing alone, provides no guidance as to what entity—Snowmass or Dr. Stanford—submitted the payments. This is of particular importance because of the nature of Dr. Stanford's dual role as guarantor and managing member of Snowmass. After development of the record, information may indicate some payments may not raise genuine issues of material fact and, consequently, could not be credited toward Dr. Stanford's guaranty liability. We therefore remand because the district court is better suited to make these critical determinations after development of the record.

## CONCLUSION

¶ 35 We hold that payments are credited toward a personal guaranty when the recipient accepting the payments has a reasonable basis to know they were submitted in satisfaction of the guaranty. We also conclude that genuine issues of material fact preclude summary judgment and that the record requires further development in light of our adoption of the reasonable basis test. We therefore reverse the court of appeals' affirmance of the district court's grant of summary judgment and remand for proceedings consistent with this opinion.

¶ 36 Justice NEHRING and Justice LEE concur in Chief Justice DURHAM's opinion.

¶ 37 Having recused themselves, Associate Chief Justice DURRANT and Justice PARRISH do not participate herein; District Judge THOMAS L. KAY sat.

Judge KAY, dissenting:

¶ 38 I respectfully dissent. I would affirm the decisions of the trial court and Court of Appeals.

¶ 39 The majority's decision on this issue of first impression is inappropriate given the facts of the case and the negative implications such precedent will have on similar cases in the future. Adoption of the majority's newly crafted "reasonable basis" test is unnecessary, and even under the majority's reasonable basis test, the facts set forth show that no reasonable basis exists to support the majority's conclusion.

¶ 40 Dr. Stanford made clear in his arguments that he had given no objective indicators that he was making payments to the guaranty. The facts noted by the majority show the Parks sent more than twenty notices to Dr. Stanford requesting payment on the Note as opposed to the guaranty. Not one of the notices sent by the Parks mentioned Dr. Stanford's guaranty. Even when Dr. Stanford made payments with personal checks some of these checks specifically referenced the Note. Objectively, these simple facts invariably point to finding these payments went toward the Note and not the guaranty. The majority correctly points out that "[a]fter development of the record, information may indicate some payments may not raise genuine issues of material fact and, consequently, could not be credited toward Dr. Stanford's guaranty liability."[1] The trial court and the Court of Appeals have already decided this issue and found no material issue of fact. The fact that Dr. Stanford may have intended something different and did not make that intent clear does not of itself create an issue of material fact.

¶ 41 Additionally, the majority for all practical purposes has prevented the applicability of summary judgment to similar cases that may arise in the future. This case is far from a "prime candidate for remand."[2] The newly crafted "reasonable basis" test in essence benefits the failing party. While the majority states the record is sparse, it was

1. Majority Opinion at ¶ 34.

2. *Id.*

the defendant that failed to meet his burden on summary judgment to put forth sufficient evidence. What the court has done is to effectively transform a simple legal issue into a question of fact. A test based on reasonableness should be an objective test, but instead the majority seems to apply a subjective test. Given the subjective nature of this decision, it is difficult to imagine any set of facts that would not allow a judge to find some issue of material fact in similar cases. The "rational basis" test is anything but rational, and will only lead to further confusion in the future, both at the trial and appellate level.