*This opinion is subject to revision before final publication in the Pacific Reporter*

**2025 UT 41**

IN THE

# SUPREME COURT OF THE STATE OF UTAH

JILL JENSEN, individually and on behalf of the Estate of
Steven Jensen, deceased, DOUG JENSEN, and PATRICIA JENSEN,
*Appellees,*

*v.*

WALGREEN CO.
*Appellant.*

No. 20240315
Heard January 13, 2025
Filed October 2, 2025

On Appeal of Interlocutory Order

Third District Court, Salt Lake County
The Honorable Keith A. Kelly
No. 210900485

Attorneys*:

Christopher P. Higley, Salt Lake City, for appellees

Elizabeth Willey, Bradley M. Strassberg, Salt Lake City,
for appellant

JUSTICE PETERSEN authored the opinion of the Court, in which
CHIEF JUSTICE DURRANT, ASSOCIATE CHIEF JUSTICE PEARCE,
JUSTICE HAGEN, and JUSTICE POHLMAN joined.

---

* Additional attorneys: David Schur, Washington, D.C., Benjamin G. Shatz, Los Angeles, Cal., Michael D. Zimmerman, Troy L. Booher, Salt Lake City, for *amicus curiae* National Association of Chain Drug Stores, in support of appellant.

JUSTICE PETERSEN, opinion of the Court:

## INTRODUCTION

¶1 Steven Jensen suffered from severe chronic pain and took oxycodone for many years to manage his condition. After Jensen went to his doctor seeking help for an unrelated ailment, his doctor prescribed an additional drug, clonazepam. When taken together, oxycodone and clonazepam can pose serious health risks. The FDA mandates a black box warning—its strongest advisory—due to the severity of the risk when these drugs are prescribed together. When Jensen went to a Walgreens pharmacy to fill his new clonazepam prescription, a warning flashed on the pharmacist's computer. But the pharmacist manually overrode the warning and sold Jensen the prescription. The next day, Jensen passed away from oxycodone and clonazepam toxicity.

¶2 Jensen's family and estate sued Walgreens, alleging that the pharmacist was negligent in various ways, including failing to warn Jensen of the risk of taking the two drugs together. Walgreens moved for summary judgment in the district court, arguing that the pharmacist had no duty to warn Jensen because of a doctrine called the "learned intermediary rule." In the negligence context, this rule creates an exception to a pharmacist's general duty of care to patients. Under the learned intermediary exception, when a pharmacist fills a prescription for an FDA-approved drug, the pharmacist has no duty to warn a patient of the drug's general risks because it is assumed that the physician who prescribed the drug— the "learned intermediary"—is best positioned to warn the patient, given their relationship. The district court ruled that disputes of material fact prevented it from granting summary judgment to Walgreens on the basis of the learned intermediary rule. And Walgreens filed this interlocutory appeal.

¶3 The question before us is whether the learned intermediary rule applies here. We conclude that it does not. The rule excuses pharmacists from warning of the general risks associated with FDA-approved medications. But this case is different in that it involves a known risk that was specific to Jensen. Given Jensen's ongoing use of oxycodone, taking clonazepam posed a heightened risk to him, specifically. In these circumstances, we conclude that the learned intermediary rule does not create an exception to a pharmacist's general duty to act as a reasonably prudent pharmacist would in the same situation.

¶4 Accordingly, we agree with the district court's denial of Walgreens' summary judgment motion. And because we also reject an alternative argument for reversal advanced by Walgreens, we affirm and remand for further proceedings.

## BACKGROUND[1]

¶5 Decedent Steven Jensen experienced severe chronic pain. To manage his pain, Jensen was prescribed oxycodone, which he took for many years. When an unrelated health issue arose, Jensen and his wife visited his primary care doctor, Dr. Cosgrave. He diagnosed Jensen with anxiety and depression, and he prescribed clonazepam to address it. Dr. Cosgrave knew Jensen was already taking oxycodone.

¶6 Clonazepam is a benzodiazepine. Oxycodone is an opioid. When taken together, the combination of the two drugs has been associated with severe respiratory side effects, such as slow or labored breathing and, in some cases, death. Because of these known interactions, in 2016 the FDA added what is commonly called a "black box warning" to clonazepam and oxycodone when they are prescribed in combination. Black box warnings are used to warn of "a serious risk that can imply death or serious harm."

¶7 In the appointment with Dr. Cosgrave, Jensen and his wife expressed concern about adding clonazepam to Jensen's existing medications, and they specifically asked if it might cause him side effects. Dr. Cosgrave assured the couple that it would be fine and proceeded to prescribe clonazepam at a dose of one milligram, twice a day. Jensen took his new clonazepam prescription to Walgreens to have it filled that same evening.

¶8 Walgreens was aware of Jensen's existing oxycodone prescription. And when Walgreens' pharmacist entered the prescription into their system, Jensen's insurer flagged the potential for a severe negative interaction between Jensen's existing oxycodone prescription and his new clonazepam prescription. This warning opened on the pharmacist's computer screen. But the pharmacist manually overrode the warning and filled the prescription without calling Dr. Cosgrave's office to make

---

[1] "In reviewing a denial of summary judgment, we view the facts and all reasonable inferences drawn therefrom in the light most favorable to the nonmoving party." *Huitron v. Kaye*, 2022 UT 36, ¶ 7 n.3, 517 P.3d 399 (cleaned up). We state the facts accordingly.

inquiries. Notably, however, Dr. Cosgrave testified that even if the pharmacist had done so, he would have instructed the pharmacist to fill the prescription exactly as written.

¶9 Whether and to what extent the pharmacist warned Jensen of potential negative side effects is disputed. However, Jensen's wife testified that if Jensen had been warned about the risk of taking clonazepam along with his oxycodone prescription, he would have told her because they regularly spoke about Jensen's medications.

¶10 Less than thirty-six hours after the Walgreens pharmacist filled Jensen's clonazepam prescription, Jensen was found dead on the floor of his bedroom. An autopsy determined that the "cause of death [was] oxycodone clonazepam toxicity."

¶11 Jensen's wife, his parents, and his estate (Plaintiffs) timely sued Walgreens and others, alleging that the pharmacist had been negligent in, among other things, not warning Jensen about the dangers of taking oxycodone and clonazepam together. After discovery, Walgreens moved for summary judgment. It argued that an exception to a pharmacist's general duty of care to patients, referred to as the "learned intermediary rule," applied in these circumstances because the pharmacist had dispensed an FDA-approved drug exactly as prescribed by Jensen's physician. Accordingly, only the physician—the "learned intermediary"—had a duty to warn Jensen of the risks of taking the two drugs together. The district court disagreed and denied Walgreens' motion.

¶12 The court of appeals granted Walgreens' petition for interlocutory review and, at Walgreens' suggestion, recommended that we recall the case. We have jurisdiction under Utah Code section 78A-3-102(3)(j).

## STANDARD OF REVIEW

¶13 The existence and scope of a pharmacist's duty to a patient is a question of law, which we review for correctness. *Downing v. Hyland Pharmacy*, 2008 UT 65, ¶ 5, 194 P.3d 944. And we review the district court's "ultimate grant or denial of summary judgment for correctness." *Orvis v. Johnson*, 2008 UT 2, ¶ 6, 177 P.3d 600 (cleaned up).

## ANALYSIS

¶14 The primary question before us is whether the learned intermediary rule applies here to shield Walgreens from liability as

a matter of law. Walgreens' main argument is that we already answered this question in *Schaerrer v. Stewart's Plaza Pharmacy, Inc.*, 2003 UT 43, 79 P.3d 922, a prescription drug case in which we applied the learned intermediary rule to a strict liability claim. Based on its reading of *Schaerrer*, Walgreens asserts that stare decisis mandates a reversal. But that is an incorrect reading of *Schaerrer*.

¶15 We first analyze our precedent and the contours of the learned intermediary rule. In a negligence case, the rule exempts pharmacists from their duty to warn of the general risks of an FDA-approved prescription drug. Outside of this, the rule does not impact a pharmacist's general duty of care to patients. Here, the Plaintiffs allege that the pharmacist was aware that the clonazepam prescription created a patient-specific risk to Jensen. We conclude that in these circumstances, the rule does not except the pharmacist from the general duty of care owed to Jensen.

¶16 We then address an alternative ground for reversal advanced by Walgreens regarding causation. And we conclude that disputes of material fact preclude summary judgment on that basis, as well.

I. THE LEARNED INTERMEDIARY RULE

¶17 Walgreens argues that the Plaintiffs cannot prevail on their negligence claim because the pharmacist did not have a duty to warn Jensen of the risks of taking clonazepam when he was already taking oxycodone. To prevail on a negligence claim, a plaintiff must establish four elements: the existence of a duty, a breach of the standard of care, causation, and damages. *Hunsaker v. State*, 870 P.2d 893, 897 (Utah 1993). Walgreens asserts that here, the pharmacist had no duty to warn Jensen as a matter of law because of the learned intermediary rule.

¶18 We adopted the learned intermediary rule in *Schaerrer v. Stewart's Plaza Pharmacy, Inc.*, in the context of a strict liability claim. 2003 UT 43, ¶¶ 20–22, 79 P.3d 922. We first undertook to explain the development of the rule. *Id.* ¶¶ 16–20. By way of background, we noted that this court had "adopted the doctrine of strict products liability set forth in section 402A of the Restatement (Second) of Torts (1965) in *Hahn v. Armco Steel Co.*, 601 P.2d 152, 158 (Utah 1979)." *Schaerrer*, 2003 UT 43, ¶ 16. In strict products liability, "[o]ne who sells any product in a defective condition unreasonably dangerous to the user or consumer . . . is subject to liability for physical harm thereby caused to the ultimate user or consumer," if

certain conditions are met. *Id.* (quoting RESTATEMENT (SECOND) OF TORTS § 402A (AM. L. INST. 1965)).

¶19 About twelve years later, in *Grundberg v. Upjohn Co.*, 813 P.2d 89, 92 (Utah 1991), we adopted comment k to section 402A, which "recognized an exception to strict liability for manufacturers and sellers of unavoidably unsafe products." *Schaerrer*, 2003 UT 43, ¶ 17. Comment k acknowledges the existence of some products, "especially common in the field of drugs," *Grundberg*, 813 P.2d at 91 (cleaned up), "which, in the present state of human knowledge, are quite incapable of being made safe for their intended and ordinary use," *id.* (cleaned up), but are still worthy of manufacture and sale because of the benefits they provide. We adopted comment k and held that, "seller[s] of [unavoidably unsafe] products, when the products are properly prepared and marketed and distributed with appropriate warnings, should not be held strictly liable for the unfortunate consequences attending their use." *Id.* at 92 (cleaned up).

¶20 And we concluded in that case that "all prescription drugs should be classified as unavoidably dangerous in design because of their unique nature and value, the elaborate regulatory system overseen by the FDA, the difficulties of relying on individual lawsuits as a forum in which to review a prescription drug's design, and . . . significant public policy considerations." *Id.* at 95 (referring to the policy considerations discussed by the California Supreme Court in *Brown v. Superior Court*, 751 P.2d 470, 478–80 (Cal. 1988)).[2] Thus, in *Grundberg*, we concluded that manufacturers and sellers of

---

[2] We made an important observation in *Grundberg*, which remains true whenever we consider a restatement:

> The American Law Institute's restatements are drafted by legal scholars who attempt to summarize the state of the law in a given area, predict how the law is changing, and suggest the direction the law should take. The restatement serves an appropriate advisory role to courts in approaching unsettled areas of law. We emphasize, however, that section 402A of the Restatement (Second) of Torts . . . is not binding on our decision in this case except insofar as we explicitly adopt its various doctrinal principles.

*Grundberg v. Upjohn Co.*, 813 P.2d 89, 95 (Utah 1991).

prescription drugs could not be held strictly liable for design defects. *Id.* at 99.

¶21 Importantly, however, this holding did not immunize manufacturers or sellers of prescription drugs from strict liability claims premised on a failure to warn. *Schaerrer,* 2003 UT 43, ¶ 19. Under Utah law, a manufacturer can be subject to strict liability for failure to warn if the "manufacturer knows or should know of a risk associated with its product [and] the absence or inadequacy of warnings renders that product unreasonably dangerous." *House v. Armour of Am., Inc.*, 929 P.2d 340, 343 (Utah 1996) (cleaned up).

¶22 This is where the learned intermediary rule fits in. As we will explain, it essentially exempts manufacturers and sellers of FDA-approved drugs from any obligation to warn the ultimate consumers of the general risks of those drugs, based on the premise that physicians are in the best position to do so. In *Schaerrer v. Stewart's Plaza Pharmacy, Inc.*, this court adopted the learned intermediary rule in the strict product liability context and applied it to both manufacturers of prescription drugs and pharmacists, as sellers of prescription drugs. 2003 UT 43, ¶ 22. Under this rule, a manufacturer of prescription drugs discharges its duty to warn by informing the medical profession of the product's risks, rather than informing the patient directly. *Id.* ¶ 20. The rationale of the rule is that the physician is best positioned to evaluate the risks and benefits of the drug in light of the "unique needs and susceptibilities of each patient." *Id.* Thus, "[t]he physician, after having received complete and appropriate warnings from the drug manufacturer, acts as a learned intermediary between the drug manufacturer and the patient when preparing the drug prescription." *Id.* (cleaned up).

¶23 In adopting the rule in *Schaerrer*, we concluded that it "must carry through to the pharmacist as well to serve its purpose fully." *Id.* ¶ 22 (cleaned up). We emphasized that pharmacists, like manufacturers, operate within a highly regulated system, and they cannot dispense prescription medication to a patient without a physician's prescription. *Id.* And we were concerned that if pharmacists could be held strictly liable for failing to warn patients of the general risks of prescription drugs, it could be disruptive to the physician-patient relationship. *Id.* ¶ 21.

¶24 Thus, we extended the learned intermediary rule to pharmacists, and we held that under the current regulatory structure, pharmacists are not strictly liable for failure to warn

about the general risks associated with FDA-approved prescription drugs. *Id.* ¶ 22. However, we explained that pharmacists "may still be liable for claims of professional malpractice or negligence." *Id.* ¶ 34.

¶25 Beyond that, we did not address whether the learned intermediary rule would apply to a negligence claim premised on a failure to warn. Although *Schaerrer* also involved a negligence claim, we resolved it on causation grounds. *Id.* ¶ 36. But in doing so, we remarked: "Although pharmacists can be held liable for negligence if there is a breach of duty, pharmacists are protected from claims if they fill a prescription precisely as directed by the manufacturer or physician." *Id.* ¶ 35.

¶26 It is this statement that Walgreens relies on to argue that, because the pharmacist filled Jensen's prescription exactly as Dr. Cosgrave had written it, *Schaerrer* governs this case and mandates summary judgment in its favor. But *Schaerrer* does not answer the question here. This statement was "unnecessary" to our resolution of the negligence claim in that case, making it dicta. *Mulligan v. Alum Rock Riverside, LLC*, 2024 UT 22, ¶ 48, 556 P.3d 21 (cleaned up); *accord State v. Robertson*, 2017 UT 27, ¶¶ 26–27, 438 P.3d 491. Also, we had not yet addressed whether to extend the learned intermediary rule to negligent failure-to-warn cases. So, in making this statement, we were not purporting to comprehensively describe the scope of the learned intermediary rule in the negligence context. *See Downing v. Hyland Pharmacy*, 2008 UT 65, ¶ 9, 194 P.3d 944 (explaining that in *Schaerrer*, "we were not required . . . to address the interface between [a pharmacist's duty to consumers] and the learned intermediary rule"). And most importantly, in a subsequent case, *Downing v. Hyland Pharmacy,* we explicitly rejected the argument Walgreens makes here. *Id.* ¶ 6 ("[T]he trial judge apparently premised his holding on the legal conclusion that under no set of circumstances could [the pharmacy] be held liable for negligence in filling prescriptions issued by a physician under *Schaerrer*. We disagree.").

¶27 *Downing* is the closest we have come to answering the question before us now. But we stopped just short of it because it was not necessary to the resolution of that case. The plaintiff in *Downing* sued a pharmacy for negligently filling his prescription for a drug that had been withdrawn from the market by the FDA and the manufacturer and for failing to warn him of the drug's status. *Id.* ¶ 3. We observed that "many courts examining the learned intermediary rule" had applied it to negligence claims

premised on a failure to warn. *Id.* ¶ 7 (cleaned up). And we agreed with those courts that "the rule makes sense in negligence as well as strict liability contexts." *Id.* But we explained that our broad application of the rule to strict liability claims in *Schaerrer* "does not mean that we will not limit its application to negligence claims when the facts and public policy require such limitation." *Id.* ¶ 9.

¶28 And we did limit its application in *Downing*. We concluded that because the pharmacist dispensed a drug that was "not authorized for sale by the FDA," the learned intermediary rule did not apply to shield the pharmacist from liability. *Id.* ¶ 10. Rather, the pharmacist owed the usual duty of reasonable care to the consumer. *Id.* ¶ 13.

¶29 However, our decision in *Downing* did not attempt to comprehensively establish the parameters of the learned intermediary rule in negligence claims. *Id.* ¶ 9 (noting that we were not "address[ing] the interface" between a pharmacist's duty to consumers and the learned intermediary rule). We did observe, though, that "[t]he majority of recent decisions discussing the rule" in other states had recognized that the rule's protections extended "only to warnings about general side effects of the drugs in question, . . . not to specific problems known to the pharmacist such as prescriptions for excessively dangerous amounts of the drug or for drugs contraindicated by information about a patient." *Id.* ¶ 8.

¶30 The district court and the parties have interpreted this statement as creating two categorical limitations on the rule where a pharmacist dispenses medication that is prescribed in an "excessively dangerous amount" or is "contraindicated" for a particular patient. But that was not our intent. In the context of explaining that we may limit the learned intermediary rule in negligence claims more so than in strict liability claims, we were simply observing some of the limitations placed by other courts. And we left for another day the question of the precise scope of the rule in Utah.

¶31 We take up that question now. In this analysis, it is important to understand that, despite its moniker, the learned intermediary rule functions more like an *exception* to a rule. In negligence cases, it is the general rule that a pharmacist has a "duty to possess and exercise the reasonable degree of skill, care, and knowledge that would be exercised by a reasonably prudent pharmacist in the same situation." *Schaerrer*, 2003 UT 43, ¶ 35 (cleaned up). Where it applies, the learned intermediary rule

creates an exception to this generally recognized duty. The task for us here is to determine the parameters of this exception in negligence claims.

¶32 Most state courts to have considered this issue have placed limits on the learned intermediary rule in negligence cases. The Supreme Court of Illinois confronted similar facts in *Happel v. Wal-Mart Stores, Inc.*, 766 N.E.2d 1118 (Ill. 2002), and it concluded that the rationale for the learned intermediary rule does not hold in situations where a pharmacist is aware of a patient-specific risk posed by a prescribed drug. *Id.* at 1129. In that case, a customer with an aspirin allergy asked Walmart to fill a prescription for a drug that was contraindicated for people with aspirin allergies. *Id.* at 1121. Walmart knew about the patient's allergy, but it filled the prescription without warning of the contraindication. *Id.* at 1121–22. Walmart argued that the learned intermediary rule eliminated any duty to warn the customer about the drug's risks to the patient. *Id.* at 1124.

¶33 The *Happel* court disagreed and reasoned that "this case is outside the purview of the learned intermediary doctrine" because the "reasons for not imposing a duty to warn on pharmacists do not apply in the instant case." *Id.* at 1127–28. The *Happel* court noted that one of the primary purposes behind the rule was to prevent pharmacists from interfering with the doctor-patient relationship. *Id.* at 1127; *see also Schaerrer*, 2003 UT 43, ¶¶ 21–22 (expounding upon the same concern). But when a pharmacist already has knowledge of a patient-specific risk, "imposing a duty to warn . . . would not require the pharmacist to learn the customer's condition and monitor his drug usage." *Happel*, 766 N.E.2d at 1128 (cleaned up). Nor would it force a pharmacist to "intrude[] . . . into the doctor-patient relationship [or] practice medicine without a license." *Id.* (cleaned up). Concluding that the public policy considerations for adopting the learned intermediary rule were not present when a pharmacist is aware of a patient-specific risk, the court held that Walmart had a "duty to warn." *Id.* at 1130. Many other courts have reached a similar conclusion when the pharmacist is aware of a patient-specific risk.[3]

---

[3] *See, e.g.*, *Klasch v. Walgreen Co.*, 264 P.3d 1155, 1156 (Nev. 2011) (en banc) ("We conclude that when a pharmacist has knowledge of a customer-specific risk with respect to a prescribed medication,

(continued . . .)

¶34 Other courts have also concluded that the policy rationale behind the learned intermediary rule is not present when a prescription contains an obvious error that a pharmacist of reasonable competence would be expected to notice.[4] Courts have

---

the pharmacist has a duty to exercise reasonable care in warning the customer or notifying the prescribing doctor of this risk."); *Moore ex rel. Moore v. Mem'l Hosp. of Gulfport*, 825 So. 2d 658, 665 (Miss. 2002) (en banc) ("An exception to the learned intermediary doctrine, as applied to pharmacists, exists where it was undisputed that a plaintiff had informed the pharmacy of health problems which contraindicated the use of the drug in question."); *Hand v. Krakowski*, 89 A.D.2d 650, 651 (N.Y. App. Div. 1982) ("Such conduct, [issuing drugs contraindicated with the use of alcohol to a patient who the pharmacy knew was an alcoholic] could be found to constitute a breach of a druggist's duty of ordinary care in that it knowingly ignores the danger and consequences of ingestion by an alcoholic of prescription drugs commonly recognized to be contraindicated."); *Pittman v. Upjohn Co.*, 890 S.W.2d 425, 434 (Tenn. 1994) ("The Court of Appeals . . . properly rejected the defense of learned intermediary where the pharmacist failed to warn a customer of the danger of one prescription drug interacting with another drug prescribed by the same physician."); *Ferguson v. Williams*, 374 S.E.2d 438, 440 (N.C. Ct. App. 1988) ("While a pharmacist has no duty to advise absent knowledge of the circumstances . . . once a pharmacist is alerted to the specific facts and he or she undertakes to advise a customer, the pharmacist then has a duty to advise correctly."); *cf. Cottam v. CVS Pharmacy*, 764 N.E.2d 814, 821 (Mass. 2002) ("[W]here the pharmacist has no specific knowledge of an increased danger to a particular customer, the pharmacist has no duty to warn that customer of potential side effects.").

[4] *See, e.g., McKee v. Am. Home Prods., Corp.*, 782 P.2d 1045, 1053 (Wash. 1989) (en banc) ("We agree pharmacists should have a duty to be alert for patent errors in a prescription, for example: obvious lethal dosages, inadequacies in the instructions, known contraindications, or incompatible prescriptions, and to take corrective measures." (cleaned up)); *Walls v. Alpharma USPD, Inc.*, 887 So. 2d 881, 886 (Ala. 2004) ("The learned-intermediary doctrine forecloses any duty upon a pharmacist filling a physician's prescription, *valid and regular on its face*, to warn the physician's

(continued . . .)

observed that, "pharmacists have the training and skills to recognize when a prescription dose is outside a normal range." *Horner v. Spalitto,* 1 S.W.3d 519, 523 (Mo. Ct. App. 1999) (cleaned up). And so imposing a "duty to be alert for patent errors in a prescription, [like] obvious lethal dosages, inadequacies in the instructions, known contraindications, or incompatible prescriptions" would not require a pharmacist to fill the role of a physician. *McKee v. Am. Home Prods., Corp.,* 782 P.2d 1045, 1053 (Wash. 1989) (en banc) (cleaned up).

¶35 We agree that the rationale for the learned intermediary rule does not extend to circumstances where a pharmacist has information about a patient-specific risk or observes an obvious error on the face of the prescription. Thus, while the learned intermediary rule exempts pharmacists from the duty to warn

---

patient, the pharmacist's customer, or any other ultimate consumer of the risks or potential side effects of the prescribed medication . . . ." (emphasis added)); *Nichols v. Cent. Merch., Inc.,* 817 P.2d 1131, 1133 (Kan. Ct. App. 1991) (concluding a pharmacist was protected under the learned intermediary rule because, among other things, "[t]here were no clear errors on the face of the prescription"); *Gassen v. E. Jefferson Gen. Hosp.,* 628 So. 2d 256, 259 (La. Ct. App. 1993) ("We hold a pharmacist has a limited duty to inquire or verify from the prescribing physician clear errors or mistakes in the prescription."); *Moore,* 825 So. 2d at 665 ("Another exception [to the learned intermediary rule] exists where pharmacists fill prescriptions in quantities inconsistent with the recommended dosage guidelines."); *Horner v. Spalitto,* 1 S.W.3d 519, 523 (Mo. Ct. App. 1999) ("Pharmacists have the training and skills to recognize when a prescription dose is outside a normal range. They are in the best position to contact the prescribing physician, to alert the physician about the dose and any contraindications relating to other prescriptions the customer may be taking as identified by the pharmacy records, and to verify that the physician intended such a dose for a particular patient. We do not perceive that this type of risk management unduly interferes with the physician-patient relationship. Instead, it should increase the overall quality of health care." (cleaned up)); *Stebbins v. Concord Wrigley Drugs, Inc.,* 416 N.W.2d 381, 387–88 (Mich. Ct. App. 1987) ("We hold that a pharmacist has no duty to warn the patient of possible side effects of a prescribed medication where the prescription is proper on its face . . . .").

patients of the general risks of FDA-approved drugs, outside of that, it does not create an exception to the general rule that a pharmacist owes a duty of care to patients.

¶36 But we emphasize that where the learned intermediary rule does not apply, it does not necessarily follow that the pharmacist is liable for negligence. It just means that the pharmacist maintains the "generally recognized duty to possess and exercise the reasonable degree of skill, care, and knowledge that would be exercised by a reasonably prudent pharmacist in the same situation." *Schaerrer,* 2003 UT 43, ¶ 35 (cleaned up). And a plaintiff would need to prove the other elements of negligence before the pharmacist would incur liability.[5]

¶37 In this case, the district court assumed in its summary judgment ruling that the learned intermediary rule shielded a pharmacist from liability, except in two situations: (1) where a pharmacist fills a prescription for a drug in an excessively dangerous amount, or (2) where the drug is contraindicated for the patient. On this basis, the court denied summary judgment to Walgreens because it concluded the Plaintiffs had raised "material factual disputes about specific problems known to the pharmacist about whether [c]lonazepam was prescribed in an excessively dangerous amount and was contraindicated for [Jensen] based on information known to the pharmacist." The court's ultimate denial of summary judgment was correct. But, as we have clarified, the learned intermediary rule does not apply to any claims alleging patient-specific negligence and is not limited to the two examples we gave in *Downing. See supra* ¶ 35.

---

[5] We note that some courts identify specific conduct that pharmacists should take in these scenarios. *See, e.g., Gassen*, 628 So. 2d at 259 ("We hold a pharmacist has a limited duty to *inquire or verify from the prescribing physician* clear errors or mistakes in the prescription." (emphasis added)); *Klasch,* 264 P.3d at 1156 ("We conclude that when a pharmacist has knowledge of a customer-specific risk with respect to a prescribed medication, the pharmacist has a duty to exercise reasonable care in *warning the customer or notifying the prescribing doctor of this risk*." (emphasis added)). But we conclude these specifics should be left to the appropriate standard of care. *See Downing v. Hyland Pharmacy*, 2008 UT 65, ¶¶ 10–12, 194 P.3d 944 (discussing the difference between duty and standard of care).

¶38 Here, the Plaintiffs have alleged that Walgreens' pharmacist was aware of a patient-specific risk. The dangers of combining clonazepam and oxycodone are well-documented in the case. And the Plaintiffs presented evidence that Walgreens had record of both Jensen's existing oxycodone prescription and his new clonazepam prescription. Further, Walgreens' system alerted the pharmacist to the potential drug interaction by displaying a warning on the computer, which the pharmacist had to manually override. Thus, the Plaintiffs provided evidence that the pharmacist was aware that the prescription posed serious risks that were specific to Jensen. The learned intermediary rule does not apply in these circumstances.

¶39 Accordingly, Walgreens was not entitled to summary judgment based on its argument that it owed no duty to Jensen as a matter of law. Rather, the pharmacist maintained the "generally recognized duty to possess and exercise the reasonable degree of skill, care, and knowledge that would be exercised by a reasonably prudent pharmacist in the same situation." *Schaerrer*, 2003 UT 43, ¶ 35 (cleaned up). With that clarification, we affirm the district court's ruling.

II. CAUSATION

¶40 We now turn to Walgreens' alternative argument that, even if the learned intermediary rule does not bar the Plaintiffs' negligence claim, the district court should have granted summary judgment in its favor because the Plaintiffs cannot show causation as a matter of law. Walgreens observes that Jensen's prescribing physician, Dr. Cosgrave, testified during discovery that even if Walgreens had called him to double-check the prescription, he would have said to fill it. Consequently, it asserts that even assuming the pharmacist had warned Jensen and called Dr. Cosgrave to inquire about the prescription, Jensen would have still taken the clonazepam because Dr. Cosgrave would have confirmed the prescription.

¶41 We conclude that there is a material dispute of fact as to whether Jensen would have still taken the clonazepam under these hypothetical circumstances. In considering a summary judgment motion, the district court is to review the evidence in the light most favorable to the nonmoving party. *Downing v. Hyland Pharmacy*, 2008 UT 65, ¶ 4, 194 P.3d 944 (citing *Surety Underwriters v. E & C Trucking, Inc.*, 2000 UT 71, ¶ 15, 10 P.3d 338). And the Plaintiffs presented evidence that Jensen was specifically concerned about

potential side effects and that if he had been warned the clonazepam was dangerous, he would not have taken it. Accordingly, we agree with the district court that there is a genuine dispute of material fact with respect to whether Jensen would have taken the clonazepam if the pharmacist would have warned him of the risk of doing so.

¶42 Thus, we decline to reverse the district court's summary judgment order on this basis.

## CONCLUSION

¶43 In negligence claims, the learned intermediary rule exempts pharmacists from the duty to warn patients of the general risks and side effects of FDA-approved drugs. But the rule does not alter a pharmacist's general duty of care to a patient when the pharmacist has knowledge of a patient-specific risk with respect to a prescribed medication, when the drug is not approved by the FDA, or when the prescription has an error apparent on its face. Because this case involves a patient-specific risk, it falls outside of the learned intermediary rule. We also reject Walgreens' alternative basis for reversal. Accordingly, we affirm and remand the case for further proceedings in the district court.

———————————